UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AVRAM GOTTLIEB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:06-cv-1387-DFH-TAB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Avram Gottlieb, a former inmate of the Federal Correctional Complex in Terre Haute, Indiana, brought this negligence action against the United States government pursuant to the Federal Tort Claims Act ("FTCA"). In October 2002, Gottlieb suffered a detached retina in his right eye, and Bureau of Prisons staff transferred him to Terre Haute Regional Hospital for emergency treatment. Gottlieb contends here that the BOP staff either knew or should have known that his condition would not be (and allegedly was not) treated appropriately at the hospital, and that the BOP employees should have transferred him directly to an ophthalmologist instead of to the hospital's emergency room. He further contends that the BOP employees failed to communicate with the hospital regarding the emergency nature of his condition, and that when the hospital's medical staff allegedly failed to act quickly enough, the BOP employees should have stepped in and taken some action of their own accord.

The government has filed a motion for dismissal or summary judgment on Gottlieb's claims, contending that the hospital and its doctors were independent contractors so that the government cannot be held liable for their actions, that any act or omission by the government was an exercise of governmental discretion exempt from liability under the FTCA, and that, in any event, Gottlieb has failed to submit evidence from which a reasonable jury could find negligence under Indiana state law. For the following reasons, the government's motion for summary judgment is granted.

I.    *Procedural History and Posture*

A.    *Briefing History and Gottlieb's Request for Additional Time*

There have been three rounds of briefing on the merits of this case, so the procedural posture here is a little more complicated than usual.  Gottlieb initially filed this action in the District of New Jersey on July 29, 2005, when he was in custody in New Jersey.  In his complaint, Gottlieb alleged that his claim was "for personal injury damages, caused by the negligent failure of the U.S. Bureau of Prisons, through its physicians and administrators, to provide timely diagnosis, emergency treatment and surgical repair for a well-known eye emergency known as retinal detachment."  Complaint ¶ 1.  He claimed that the government "was under a duty to provide good and prompt medical care to the plaintiff," and set forth several allegedly negligent acts.  Complaint ¶¶ 35-36.  In particular, Gottlieb

claimed that the BOP failed to examine his eye and diagnose him in a timely manner, failed to treat his condition as an emergency and to take appropriate emergent measures, failed to transport him to a facility capable of handling his condition, failed to notify "the ophthalmologist with whom the [BOP] had an arrangement" of the situation and failed to direct that ophthalmologist to find Gottlieb at the hospital, failed to send a written communication along with Gottlieb so that the hospital's doctors could be made aware of "any arrangement in place for a particular physician [to] treat the plaintiff's eyesight emergency," failed otherwise to remain in contact with the hospital and remain involved in treating Gottlieb after he arrived at the hospital, failed to authorize the guards who transported Gottlieb to the hospital to transport him to a different facility, failed to implement regulations, protocols or standing orders so that the prison's administrators could manage medical emergencies after prison clinic hours, and "abandon[ed] the plaintiff by taking him to the Terre Haute Regional Hospital and providing no oversight or supervision of the medical care which defendant was under a duty to provide."  Complaint ¶ 36.

On March 25, 2006, the government moved for summary judgment, dismissal, or transfer of Gottlieb's case to the Southern District of Indiana ("Def. Brief").  Substantively, the government argued that the United States could not be held liable under the FTCA for the allegedly negligent treatment Gottlieb received while in the care of Terre Haute Regional Hospital, an independent contractor, and that the BOP employees satisfied their duty of care by quickly transferring Gottlieb

to the hospital so that he might receive specialized care.[1]  Procedurally, the government argued that venue was improper in New Jersey because Gottlieb was not a New Jersey resident and none of the events alleged in the complaint occurred in New Jersey.[2]

Gottlieb responded to the government's motion on May 4, 2006 ("Pl. Response").  He argued that the government's motion should be denied without prejudice so that he could conduct discovery.  In opposing the government's substantive defenses, Gottlieb argued that the government's "independent contractor" defense did not bar his claims because "[t]his complaint asserts ordinary negligence by reason of the conduct of the Bureau's prison[] guards who . . . had Mr. Gottlieb in their custody at all times.  The *guards* did not act reasonably with the knowledge that Mr. Gottlieb's emergency could not be treated at the Hospital."  Pl. Response 3 (emphasis in original).  These claims, Gottlieb asserted, "inherently require an assessment by a fact-finder as to whether the Government – having delivered Mr. Gottlieb to the Hospital, no longer had any

---

[1]The government also argued that Gottlieb's negligence claims were barred because he had been contributorily negligent.  The court disposed of this defense in an earlier entry.  See *Gottlieb v. United States*, 2007 WL 1068465, *2 (S. D. Ind. Apr. 4, 2007) (rejecting defense, applying Indiana law, and finding that claims of negligence against private persons in Indiana are not subject to the defense of contributory negligence).

[2]The government also argued that Gottlieb's claims were procedurally barred because he did not present a completed administrative claim to the proper office until after the expiration of the limitations period.  The government withdrew this argument when it supplemented its motion for summary judgment on November 16, 2006.  See Supplemental Def. Br. 1-2.

duty to Mr. Gottlieb to get him [to] a facility that could handle his emergency." Pl. Response 4-5. The New Jersey district court did not reach the merits but transferred the action to this district.

After the transfer, the government supplemented its motion for summary judgment or dismissal on November 16, 2006, and Gottlieb responded on December 15, 2006. Supplemental Def. Br.; Supplemental Pl. Response. The government raised a new defense based on the FTCA's discretionary function exception. The government argued that any claims Gottlieb might have regarding the government's decision to hire a contractor like the hospital to provide medical care, and any claims regarding negligent supervision of the medical care provided by that contractor, fell within the discretionary function exception to the FTCA and thus were barred. Supplemental Def. Br. 4. Gottlieb responded, disavowing any claim he might have brought regarding the government's choice to contract with hospital:

> The Government *recasts* the negligent actions of the prison guards as a challenge to the discretion of the prison administration to make contracts with "independent contractors" for certain medical services. However, The [sic] plaintiff's Complaint *does not contain any allegation* that the *choice* of the 'vendor,' i.e. Terre Haute Medical Center, was a negligent act.
>
> This case has but one central theme: The guards (not the lawyers who wrote the contracts) did not act reasonably under the circumstances, given their direct knowledge that Mr. Gottlieb's emergency *could not be treated* at the Terre Haute Medical Center Hospital.

Supplemental Pl. Response 2 (emphasis in original).  Procedurally, Gottlieb argued that the court should deny the government's motion so that discovery could be conducted.  *Id.* at 7.  Finding that Gottlieb made a good faith showing that he could not respond to the government's affidavits, the court denied the government's motion without prejudice under Rule 56(f) to give Gottlieb an opportunity to conduct discovery.  See *Gottlieb*, 2007 WL 1068465, at *3.

Discovery commenced.  The parties established a case management plan that was approved and adopted by the court on June 7, 2007.  Dkt. No. 23.  According to that plan, the parties agreed that non-expert witness discovery and discovery related to liability issues would be completed by November 3, 2007, and that expert witness discovery and discovery relating to damages would be completed by April 7, 2008.  See Dkt. No. 16.  The deadline for dispositive motions was set for January 10, 2008.  See Dkt. No. 23.  In a status conference on October 30, 2007, the deadline for liability discovery was extended to February 1, 2008.  See Dkt. No. 29.  The deadline for dispositive motions was not extended, however, and remained set for January 10, 2008.

A third round of summary judgment briefing is now complete.  The government filed a renewed motion for dismissal or summary judgment on the deadline of January 10, 2008.  Renewed Def. Br.  Gottlieb responded on February 12, 2008.  Renewed Pl. Response.  In this third round, Gottlieb expanded his claims to include the BOP's medical staff at the Terre Haute prison,

but insists that he does not bring a medical malpractice action.   Renewed Pl. Response 5-6.  He clarifies that "[t]his complaint asserts *ordinary* negligence (i.e. not medical negligence) by reason of the conduct of the Bureau's medical care employees and its prison guards, who . . . had Mr. Gottlieb in their custody *at all times*.  While Dr. Webster is a physician, he *also* has a duty to use reasonable care of an ordinary person in the given circumstances."  *Id.* at 6 (emphasis in original).  Also, in response to the government's renewed motion, Gottlieb asked for still more time, stating that "in the time previously allowed, while three informative depositions were taken, the inquiries needed to address the Government's ground of lack of evidence to be offered by the Plaintiff cannot be fully responded to (for the reasons stated within)."  Renewed Pl. Response 1.  The "reasons stated within" are considered in full below.

Gottlieb's request for additional time is denied.  His request does not comply with Rule 56(f).   Furthermore, Gottlieb had ample opportunity to conduct discovery.   He belatedly informed the court (by a footnote in his Renewed Response) that he requested and scheduled Lt. Troutman's deposition on December 21, 2007 but was then told that Lt. Troutman was unavailable on that date because he was not scheduled to report to the prison for work.  Renewed Pl. Response 5, n.4.  When Lt. Troutman's deposition was cancelled, more than a month remained before the liability discovery deadline expired.  Gottlieb has not demonstrated that he made any use of that time, nor has he offered any excuse or explanation for his delay.  He states only that "no alternative date for the

Troutman deposition, or Mr. Troutman's January schedule, was offered to Plaintiff's counsel." *Id.* Conspicuously absent from his request for additional time is any assertion that plaintiff's counsel made any effort to reschedule Lt. Troutman's deposition in the time that was allowed and available to him.

Perhaps Gottlieb did not check the case docket to remind himself of the case management plan deadlines. Perhaps he was aware of the case management deadlines, but believed them to be "soft," or flexible deadlines. It is not uncommon for the court to grant requests to extend case management deadlines, provided the requests are not objected to, are made prior to the expiration of the deadlines at issue, are supported by cause, and do not jeopardize a trial date. However, this court is not in the habit of granting extensions for deadlines that have already passed without a showing of excusable neglect. See Fed. R. Civ. P. 6(b); see also *Roach v. Pedigo Holdings Inc.*, 2005 WL 2253590 (S. D. Ind. Sept. 9, 2005) (denying belated request for additional time for discovery); accord, *Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459, 463-64  (7th Cir. 2005) (affirming denial of belated request for additional time for discovery). Gottlieb has fallen well short of this showing. The court is not obliged to grant him still more time and to set up yet a fourth round of briefing on these issues. See Fed. R. Civ. P. 1 (rules construed for just, speedy, and inexpensive determinations of actions). The court will decide this case based on the record presented by the parties in the defendant's original, supplemented, and renewed motions for summary judgment and the parties' associated briefs.

Another small point deserves mention before addressing the merits of Gottlieb's claims. Gottlieb's response accuses the government of moving for disposition of his claims "prematurely," stating that "this motion was filed two weeks before the end of the discovery time, and with knowledge that Plaintiff's counsel needed rescheduling of at least one additional deposition of a key witness, [Lt. Troutman]." Renewed Pl. Response 1.

The government's motion was not premature. It was filed on the last day allowed by the schedule. Nothing in the Federal Rules of Civil Procedure requires that a party wait until after discovery has been completed before filing a motion for summary judgment. See Fed. R. Civ. P. 56(a) (motion may be filed any time after 20 days have passed from commencement of action or after opponent files motion). In fact, filing a motion before discovery has ended can often be an advantage for the non-moving party. It may alert him to gaps in his evidence that he can try to fill with further discovery. The government did not file its motion prematurely.

B.    *Current Status and the Summary Judgment Standard*

In light of uncertainty over which defenses under the FTCA are "jurisdictional," see *Palay v. United States*, 349 F.3d 418, 424-25 (7th Cir. 2003) (noting uncertainty and collecting cases), it is understandable that the government has framed its motions as both motions to dismiss for lack of jurisdiction under

Rule 12(b)(1) and motions for summary judgment on the merits of the claims under Rule 56.  The parties have presented materials outside the pleadings, so Rule 12(b)(6) does not apply here.  The court need not take sides on the jurisdiction/merits question in this case.  The undisputed facts show that the United States is entitled to summary judgment, regardless of whether the decision is deemed one on the merits or on subject matter jurisdiction.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  To prevail, the moving party must show that there is no genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on an issue at trial, and where the motion challenges the non-moving party's ability to meet that burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e)(2); see also *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999).  The moving party need not positively disprove the opponent's case.  It may prevail by establishing the lack of evidentiary support for that case.  See *Celotex Corp.*, 477 U.S. at 325.

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine only if there is sufficient evidence for a reasonable trier of fact to find in favor of the non-moving party on the evidence presented.  See *id.*  In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light reasonably most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 323.

Local Rule 56.1 governs summary judgment motions filed in this district and provides tools to manage the presentation of factual and legal issues in motions for summary judgment.  The government's moving papers complied with the rule.  In turn, Local Rule 56.1 required Gottlieb, as the non-moving party, to respond to the government's properly supported summary judgment motion with a brief that includes a "Statement of Material Facts in Dispute."  Local Rule 56.1(b).  This section of Gottlieb's brief should have identified "the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment."  *Id.* These factual assertions should have been "supported by appropriate citations" to the record or other competent evidence submitted with his brief.  *Id.*

Gottlieb's Renewed Response failed to meet these basic and essential requirements.  In total, the so-called "Material Facts Are in Dispute" section of Gottlieb's Renewed Response consists of the following paragraphs.  Gottlieb's citations and emphases are included:

> The so-called "undisputed facts" proposed by the Defendant are self-serving statements (with several doses of legal conclusions) made by Government witnesses. On Page 3 of Defendant's memorandum, there are references to isolated pages of deposition transcripts.  Some references are so out of context that they border on misstatements.  There are many facts recited in those *full* depositions (attached as exhibits to this response) which support the allegations of negligence in the complaint (infra at p 9).

> The Court is invited to review the Webster deposition *summary* which isolates the facts most relevant to the allegations in the complaint, and the other exhibits.  Also attached is a chronology of relevant entries from the prison medical record and the patient's chart at the Hospital (also attached as exhibits).

Renewed Pl. Response at 2-3.  By footnote in his "Material Facts Are in Dispute" section, Gottlieb provides an index to the exhibits attached to his brief, which includes the full deposition transcripts of the depositions of Dr. Webster (Ex. 1) and William Tharp (Ex. 3), Gottlieb's summary of Dr. Webster's deposition (Ex. 2), Gottlieb's "Chronology of Relevant Entries" (Ex. 4), the hospital medical chart (Ex. 5), and the prison medical chart (Ex. 6).  At least the "summary" of Dr. Webster's deposition cites specific pages of Dr. Webster's deposition.  Renewed Pl. Response, Ex. 2.  The only other citations associated with Gottlieb's statement of disputed facts are not citations at all.  As Gottlieb explained, he typed events described in the chronology in different fonts depending on the source of the information.  However, he did not pinpoint where the court might find that information within

those sources.   Renewed Pl. Response, Ex.4.   Without specific pinpoints, his variant-font citation method, though creative, is of little use to the court.   For example, Gottlieb used one font to distinguish both Dr. Webster's deposition and the prison medical chart, which are two separate exhibits and together total nearly 100 pages.

This is not a quibble about the technicalities of proper citation format.   Rule 56(e)(2) requires a party opposing summary judgment to "set out specific facts showing a genuine issue for trial" – not general references to entire files or depositions.   Local Rule 56.1(a) requires both moving and non-moving parties to cite specific pages or paragraphs so that the court is not forced to undertake an unguided ramble through the record.   Attaching entire depositions to a response brief without appropriate citation to relevant passages does not suffice, with or without the attachment of a deposition "summary" and unsupported chronology of events.   The court is under no obligation to uncover or raise disputed facts on Gottlieb's behalf and will not endeavor to do so here.   See *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) ("court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity"); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (mere disagreement with moving party's assertion is not sufficient without specific record citations); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (court need not "scour the record" to search for evidence opposing

summary judgment);  *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) (same).

Although the court is permitted to excuse a party's failure to strictly comply with the terms of the local rule in the interests of justice or for good cause, here there is no good reason to excuse Gottlieb's failure to comply.  To excuse his non-compliance would defeat the purpose of the rule, would prejudice the government as the moving party, and would unduly burden the court in its attempt to manage the summary judgment process.  The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."  *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000).

Recall that this is the third round of summary judgment briefing.  In the first two rounds, a decision on the merits was postponed in the interest of first establishing proper venue and then providing a reasonable opportunity for discovery.  But Gottlieb and his counsel knew this day was coming.  They had ample opportunity to prepare his record, to develop any facts to raise in dispute in anticipation of the government's motion, and to craft a brief that would comply with the applicable requirements.  They have failed to do so.  As a consequence, the court assumes that the facts claimed and supported by admissible evidence by the government are admitted to exist without controversy, except to the extent that Gottlieb has specifically controverted them.  Local Rule 56.1(e).

II.     *Facts for Summary Judgment*

There are three summary judgment briefs in this case, and three responses. The following facts are gleaned from those documents.  As is required at summary judgment, the facts are either undisputed or reflect the admissible evidence in the light most favorable to Gottlieb, as the non-moving party, at least to the extent Gottlieb has specifically disputed the facts offered by the government.  Facts adverse to Gottlieb that the government has established beyond reasonable dispute are necessarily included.

A.     *The Bureau of Prisons and the Terre Haute Regional Hospital*

The United States Bureau of Prisons operates a prison in Terre Haute, Indiana to house federal inmates.  The Terre Haute prison had a health services unit on site to care for and maintain the general health of its inmates.  Bryant Dec. Ex. 1 at ¶ 1.1.1.  The BOP found that the health care services needed were so varied and unpredictable that it was not practical for the prison to maintain an on-site health care staff and facility capable of treating the entire range of afflictions that might be encountered there.  *Id.*  When emergency situations arose, or when inmates required hospitalization or specialized medical care, inmates had to be transported from the prison to an outside health provider.  Bryant Dec. ¶ 3-5; Bryant Dec. Ex. 1 at ¶ 1.1.2.  Since 1998, the BOP has contracted with Terre Haute Regional Hospital to provide those services.  Bryant Dec. ¶ 2.

According to the terms of the contract, the hospital was required to provide comprehensive hospital, emergency room, and physician services, as well as specialty provider services for the inmate population of the Terre Haute prison. See Bryant Dec. ¶ 5; Bryant Dec. Ex. 1 at ¶ 5.1.1.2.  The hospital was required to provide doctors in various medical specialties, including ophthalmology, and was responsible for hiring those doctors and substituting doctors as necessary. Bryant Dec. Ex. 1 at ¶¶ 1.2.2, 1.2.6, 5.1.1.2.  The BOP did not contract with individual doctors to provide services at the hospital.  Bryant Dec. ¶ 8.  The hospital was also required to purchase and maintain any necessary equipment, supplies, and medical materials, and was responsible for obtaining liability insurance for any treatment it provided.  Bryant Dec. Ex. 1 at ¶¶ 1.2.10, 4.1. Although the BOP retained the right to evaluate the quality of professional and administrative services provided by the hospital under the contract, it retained no control over the professional aspects of the services rendered, including the hospital's medical judgment, diagnosis, or specific medical treatment.  Bryant Dec. Ex. 1 at ¶ 1.2, 1.3.1.  By way of amendments extending the term of the contract, the hospital's contract was in effect from October 1, 2002 through September 30, 2003.  Bryant Dec. ¶ 3; Bryant Dec. Ex. 1 at ¶¶ 1-5.


B.     *Gottlieb's Eye Condition and Treatment*

In the fall of 2002, Gottlieb was incarcerated in the Terre Haute prison.  On the evening of October 22, 2002, Gottlieb noticed a change in the vision of his

right eye.  See Complaint ¶ 11.  He noticed that his vision was becoming blurred, and he was perceiving flashes of light.  *Id.*  At approximately 7:00 a.m. on October 23, 2002, Gottlieb reported to the prison medical clinic for an evaluation, but the prison medical clinic was not open and he was advised by an unnamed prison staff member, whom he believed to be a physician's assistant, to return if his condition worsened.  Complaint ¶ 12.

Gottlieb returned to the clinic at 3:50 p.m. on October 23, 2002 and saw a physician's assistant, Joseph Williams.  Doucette-Lunstrum Dec. Ex. 2 at 1-2.  Gottlieb complained that he was experiencing "floaters" in the field of vision of his right eye and reported that he had noticed the progressive loss of vision in the bottom half of the field of vision of his right eye.  He also had a headache.  Williams checked Gottlieb's vision and confirmed that Gottlieb was unable to see in the lower half of his right eye's field of vision.  *Id.* at 1.  Williams consulted with Dr. Thomas Webster, the clinical director of the prison health services unit.  *Id.*  Dr. Webster did not personally examine Gottlieb.  Webster Dep. 24-25.  Dr. Webster believed that Gottlieb might have a detached retina, and the prison clinic notes reflect that Dr. Webster planned to contact Dr. Jonathan McGlothan, an ophthalmologist, for his recommendation.  *Id.*; Doucette-Lunstrum Dec. Ex. 2 at 2.  Dr. Webster did not contact Dr. McGlothan.  Instead, Dr. Webster decided to send Gottlieb directly to the hospital's emergency room for treatment.  Webster Dep. 28, 30.  Dr. Webster's reason for sending Gottlieb to the emergency room rather than attempting to contact Dr. McGlothan was "speed."  Webster Dep. 30-

-17-

32.   Under the date and time for this entry in the prison clinic log is written "Emerg."  Doucette-Lunstrum Dec. Ex. 2 at 1.

Prior to departing the prison, the guards taking Gottlieb to the hospital had to obtain the necessary restraints, weapons, and clearance.  Doucette-Lunstrum Dec. ¶ 5.  Also, a prisoner count was scheduled at 4:00.  *Id.* at ¶ 4.  By 5:08 p.m. Gottlieb was being escorted to the hospital, and the hospital records show that he checked into the emergency room at 5:20 p.m.  Doucette-Lunstrum Dec. Ex. 2 at 2; Webster Dep. Ex. D; Renewed Pl. Response Ex. 5 at 5.[3]  Dr. Ruben Gonzales attended Gottlieb when he arrived at the hospital.  Renewed Pl. Response Ex. 5 at 1. Dr. Gonzales' notes reflect that the initial plan was to refer Gottlieb to an ophthalmologist and a neurologist.  *Id.* at 4.  Other notes from Gottlieb's medical record at the hospital reflect that Dr. Farber was called and stated that he was no longer the ophthalmologist for federal prisoners.  *Id.* at 6.  The hospital's notes then reflect an apparent change in the treatment plan, noting "no optho. consult for now."  *Id.*  A CAT scan was ordered, and at 7:50 p.m. Gottlieb was admitted for overnight observation and bed rest.  *Id.*; Doucette-Lunstrum Dec. Ex. 8 at 10.

---

[3]Gottlieb's "Chronology of Events" notes that although the prison clinic records reflect that he was escorted to Regional at 4:40 p.m., the "Escorted Trip Authorization," (found, with some assistance from Gottlieb's variant-font "citation" format, as Exhibit D to Dr. Webster's Deposition) notes that the departure time from the prison was 5:08 p.m.  Gottlieb did not cite either his Chronology or the Escorted Authorization form in his briefs, and he made no argument that this apparent discrepancy is material to his claims.

Dr. McGlothan examined Gottlieb at the hospital the morning of October 24, 2002.  Doucette-Lunstrum Dec. Ex. 2 at 9, Ex. 8 at 8-9; Renewed Pl. Response Ex. 5 at 8-9.  He immediately referred Gottlieb to Dr. Sang Kim, a retina specialist, in Indianapolis.  *Id.*  Prison guards transported Gottlieb to Indianapolis, and later that day, Dr. Kim performed surgery to reattach Gottlieb's retina.  Doucette-Lunstrum Dec. Ex. 2 at 2, 7; Ex. 8.  After a follow-up appointment in March 2003, Dr. Kim wrote that though Gottlieb complained of occasional pain and floaters in his right eye, he was "doing very well" and was "able to perform normal daily activities, including all forms of sports without restrictions."  Doucette-Lunstrum Dec. Ex. 2 at 7.

C.     *BOP Policies Regarding Care and Transport of Inmates*

The medical services unit at the prison had scheduled hours for "sick call."  However, inmates were instructed that if a medical emergency arose, an inmate could immediately report it to BOP employee.  Doucette-Lunstrum Dec. ¶ 3.  The BOP does not require an inmate with an emergency medical condition to wait to see a doctor, physician's assistant, or nurse.  *Id.*

The job of the guards who transported a prisoner to an outside health care provider was to ensure the safety and security of the inmate and of the people in the hospital.  Smith Dec. ¶ 4; Tharp Dep. 20-21.  It is normal protocol for transport guards to remain with the prisoner while the prisoner is being treated

in the emergency room.  Tharp Dep. 21.  Guards were not medical personnel and were not required or expected to make any decisions that could affect the medical treatment the prisoner received.  Smith Dec. ¶ 5.  There were no standing orders in place for transportation teams to contact the medical staff at the prison upon their arrival at the hospital, and no mandatory policies required a transporting officer to consult with anyone at the prison about care being provided outside the institution.  Webster Dep. 74; Tharp Dep. 39.  Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

III.    *Discussion*

Gottlieb's exact claims have been a moving target over the course of this case.  As best the court is able to discern, Gottlieb claims that Dr. Webster, and/or his unnamed staff (the court presumes Gottlieb intends to implicate Joseph Williams, the physician's assistant), and/or the unnamed guards (again, based on the record, the court presumes Gottlieb intends to implicate Lt. Troutman and/or Lt. Tharp) were negligent by failing to care for Gottlieb properly while he was in their custody or control but physically located at the hospital. Gottlieb's claims seem to be that the government employees (1) failed to transport Gottlieb directly to the care of an ophthalmologist; (2) failed to communicate effectively with the hospital and with an ophthalmologist regarding his need to see an ophthalmologist; (3) failed to remain involved in and oversee his treatment while he was at the hospital; (4) failed to redirect him to an ophthalmologist after

-20-

he arrived in the emergency department of the hospital; and/or (5) failed to implement policies or regulations to handle after-hours emergency medical situations.

The government argues that Gottlieb's claims are barred either because they fall under the independent contractor exclusion or the discretionary function exception to the Federal Tort Claims Act.  The government also argues that Gottlieb has not demonstrated that the BOP employees owed him a duty to prevent alleged medical malpractice by the hospital staff, has not offered evidence to support a finding that BOP staff breached that duty, and that Gottlieb cannot establish that he suffered any injury as a result of the BOP employees' alleged actions or inactions.  For the reasons set forth below, the undisputed facts show that the government's motion must be granted.

A.    *The Independent Contractor Exclusion*

Generally, the federal government is immune from suits for money damages under the principle of sovereign immunity, but the government has broadly waived that immunity through the Federal Tort Claims Act ("FTCA"), which authorizes suits against the government for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person,

-21-

would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

The word "employee" in the FTCA includes employees of any federal agency but excludes "any contractor with the United States."  28 U.S.C. § 2671; *Alinsky v. United States*, 415 F.3d 639, 644 (7th Cir. 2005); *Quilico v. Kaplan*, 749 F.2d 480, 482-83 (7th Cir. 1984).  The term "employee" includes "officers or employees of any federal agency, members of the military . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, with or without compensation."  28 U.S.C. § 2671.  In turn, the term "federal agency" is defined as "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States but does not include any contractor with the United States."  *Id.*  Thus, there is no waiver of sovereign immunity for tort actions against the government based on actions of an independent contractor, and the government can be liable only for the torts of government employees.  28 U.S.C. § 1346(b).

In each of the three rounds of briefing in this case, the government has renewed its assertion that the independent contractor exclusion bars Gottlieb's claims.  The prison medical staff and the guards were obviously government employees, but the government argues that Gottlieb's claims against the prison's

medical personnel and the guards are an improper device designed to hold the government liable for actions of the hospital and its physicians, who were independent contractors.  Gottlieb agrees that the hospital and its physicians were independent contractors, but he insists that his claims in this lawsuit do not implicate the hospital or its physicians.  He claims that the BOP employees failed to continue to oversee and supervise his medical care even after he arrived at the hospital and the hospital had assumed his care.  He suggests that the BOP employees should have communicated differently with the hospital, should have somehow recognized that the hospital was not providing him with adequate care and should have intervened in his treatment by seeking out an ophthalmologist.  As discussed below, Gottlieb's accusations are speculative and legally unsupported, but the independent contractor defense does not bar his claims based on the actions of the BOP employees.  The hospital and its physicians were independent contractors, but the BOP employees were not.  His claims against the government employees are sufficiently distinct from his claims against the hospital and its physicians so that his claims of government negligence survive the independent contractor defense.

B.     *The Discretionary Function Exception*

The government also argues that Gottlieb's claims are barred by the discretionary function exception to the FTCA.  This exception to the FTCA applies to "any claim . . . based upon the exercise or performance or the failure to exercise

or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." See 28 U.S.C. § 2680(a).  The discretionary function exception exists to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy.  See *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984); *Palay*, 349 F.3d at 427.  As such, it has been interpreted broadly to include claims based on the acts or omissions of government employees performing, or failing to perform, a discretionary function or duty, meaning day-to-day operational decisions as well as policy-making decisions.  See *United States v. Gaubert*, 499 U.S. 315, 332 (1991).

The BOP decision to contract with the hospital for certain medical services, including specialized and emergent care, involved the type of policy-based, and therefore discretionary, decisions protected by the discretionary function exception.  Gottlieb has not disputed the point.  Supplemental Pl. Response 2; see, *e.g*, *Alinsky*, 415 F.3d at 648 (affirming summary judgment for government on claim that government acted negligently by contracting air traffic control duties to a private contractor; discretionary function exception applied).  The government would have the court expand Gottlieb's concession to bar Gottlieb's claims on the theory that all of the BOP employees' actions or omissions stem from the original decision to contract with the hospital, and thus are all protected under the discretionary function exception.  In spite of the government's urging, the court is not persuaded to adopt such a broad an absolute rule that once the government

has entered into a contract for services, the government is immune from all liability for negligently administering or overseeing the performance of a contract by an independent contractor, particularly when that contract pertains to the care of federal inmates.  However, the court agrees with the parties that the BOP's decision to contract with the hospital for emergent and specialized care for its prison population was a discretionary function and thus is not actionable under the FTCA.

Though he acknowledges that the government will not be liable for exercise of its discretion to contract with an outside vendor, Gottlieb maintains his allegation that in this case the government should be liable for the BOP employees' alleged failure to implement regulations, protocols, or standing orders so that the prison's administrators could manage medical emergencies after prison clinic hours.  See Complaint ¶ 36.  The evidence does not support this allegation.  According to the undisputed evidence, such a protocol did exist – inmates were instructed that if a medical emergency arose, they could immediately report it to a BOP employee and did not need to wait for "sick call."  Doucette-Lunstrum Dec. ¶ 3.  Thus, this case does not present an instance in which the court must address whether or not any alleged failure on the part of the BOP to enact a policy or regulation to handle after-hours emergency medical situations would be barred under the discretionary function exception to the FTCA.  Gottlieb's claim that the BOP should have enacted such a protocol fails for lack of evidence.

C.     *Common Law Negligence*

The government argues that Gottlieb has not supported a claim for negligence under Indiana state law.   Where claims arise under the FTCA, government employees are held liable to a claimant "in accordance with the law of the place where the act or omission occurred."   28 U.S.C. § 1346(b).   Here, Indiana's substantive law governs.   To show negligence under Indiana state law, Gottlieb must demonstrate (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach.   See *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007); *French v. State Farm Fire & Cas. Co.*, 881 N.E.2d 1031, 1039 (Ind. App. 2008).   Generally, the mere fact that an injury occurred will not give rise to a presumption of negligence under Indiana law.   *Narducci v. Tedrow*, 736 N.E.2d 1288, 1292 (Ind. App. 2000); *citing Baker v. Coca Cola Bottling Works*, 177 N.E.2d 759, 762 (Ind. App. 1961).   The government argues that Gottlieb has failed to offer evidence from which a reasonable jury could find in his favor on any of these three elements and that the court should enter summary judgment on its behalf.

In his Response, Renewed Response, and Supplemental Response to the government's summary judgment motions, Gottlieb makes no substantive argument in support of his underlying negligence claims, and his claims could be dismissed on this basis alone.   Fed. R. Civ. P. 56(e)(2) ("[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response

must . . . set out specific facts showing a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").

In his efforts to evade dismissal under the independent contractor exclusion or the discretionary function exception, Gottlieb has retreated to a very small legal corner.  To avoid dismissal under the independent contractor exclusion, he severs the alleged acts or omissions of the hospital and its physicians from the alleged acts or omissions of the BOP employees.  Because he does not present expert medical testimony, he argues that he does not bring a claim of medical malpractice against the government.[4]  To sidestep the discretionary function exception, he brings no claim related to the government's decision to contract with the hospital.  After chipping away at his claims, Gottlieb is left with his assertions that the BOP medical staff should have sent him directly to an opthalmologist rather than sending him to the emergency room, that the BOP employees should have communicated differently with the hospital staff, that the BOP guards should have intervened in his medical care at the hospital, or that the BOP guards should have recognized the hospital's failure to provide him with adequate care and should have taken him to another provider.  On this record, no reasonable trier of fact could find that any of these speculations rises to the level of actionable negligence against the government.

---

[4]A medical malpractice case in Indiana requires expert medical testimony to establish the degree of care and skill required of a physician.  *Ho v. Frye*, 880 N.E.2d 1192, 1201 (Ind. 2008);  *Narducci* , 736 N.E.2d  at 1292.

No doubt, the government owed Gottlieb a duty.  Indiana law recognizes that a custodian has a legal duty to exercise reasonable care to preserve the life, health and safety of a person in custody.  See *Sauders v. Country of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998);  *Cole v. Indiana Dep't of Correction*, 616 N.E.2d 44, 45-46 (Ind. App. 1993);  *Johnson v. Bender*, 369 N.E.2d 936, 939 (Ind. App. 1977) (finding that a sheriff who was charged with the care and custody of a prisoner had a duty to take reasonable precautions under the circumstances to preserve the life, health, and safety of the prisoner).  To survive summary judgment, however, Gottlieb must demonstrate that the actions or omissions of the BOP employees breached that duty in some way.  In his attempt to preserve a claim against the government, he speculates (without legal authority) that the BOP employees should have done many things differently, but the undisputed facts before the court show that Gottlieb could not prove that the BOP failed to act reasonably under the circumstances.

The undisputed evidence shows that the BOP employees recognized that Gottlieb required emergency medical care that they were not able to provide at the prison, and that they transported him promptly to the hospital that had agreed to provide both emergent and specialized medical services to prisoners.  Although Gottlieb offers several scenarios for how BOP employees might have acted differently, there is no evidence before the court to show that any of those alternatives would have resulted in a different outcome, or even that his proposals were an available option for the BOP employees under the circumstances.  For

example, there is no evidence before the court sufficient to show that Dr. McGlothan would have been available to provide emergency care to Gottlieb in the late afternoon or evening of October 23, 2002. Likewise, there is no evidence that the BOP employees' method of communication with the hospital emergency room staff would have made any difference in the hospital's care, particularly since the evidence does not indicate that Gottlieb had any trouble communicating with the hospital physicians who examined him. In addition, Gottlieb has failed to demonstrate that the BOP's guards had any medical expertise such that they could have substituted their expertise for that of the hospital's physicians or that the guards could have recognized that the care being provided by the hospital was substandard, so as to prompt them to whisk Gottlieb to a different provider or to seek authority from prison higher-ups to do so.

Gottlieb simply has not offered evidence that would allow a trier of fact to find that BOP employees acted unreasonably. The BOP employees recognized that Gottlieb suffered from a specialized medical condition that required emergency care. Knowing that the prison clinic could not provide the treatment he needed, the BOP employees immediately and safely transported him to the medical provider contracted to provide for the very emergency services Gottlieb needed. It is difficult to conceive of any set of actions more reasonable under these circumstances.

Finally, and perhaps most fundamentally, the only admissible evidence available in the record regarding the condition of Gottlieb's right eye after all these events is an undisputed note by Dr. Kim.  Five months after surgery, Dr. Kim wrote that Gottlieb was "able to perform normal daily activities, including all forms of sports without restrictions."  Doucette-Lunstrum Dec. Ex. 2 at 7.  Although Gottlieb reported occasional floaters and pain in his right eye, this appears to have been the only complication still present when he saw Dr. Kim in March 2003.  *Id.* To prevail on a negligence claim, Gottlieb would have to prove that this minor residual damage was proximately caused by the government employees' actions or omissions.  Under Indiana law, a finding of proximate cause requires some showing that the injury was a natural and probable result that, in light of the circumstances, should reasonably have been foreseen or anticipated.  See *Bader v. Johnson*, 732 N.E.2d 1212, 1218 (Ind. 2000).  Gottlieb has failed to offer any evidence, medical or otherwise, from which a reasonable trier of fact could find that the BOP employees' actions (or alleged inactions) proximately caused Gottlieb's residual injuries, and the court has uncovered nothing in the record that would support such a finding.  Accordingly, Gottlieb's claims fail.

IV.   *Conclusion*

The government's motion for summary judgment is granted.  The court will enter final judgment accordingly.

So ordered.

Date: May 12, 2008

_____

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Brian E. Appel
LAW OFFICE OF BRIAN E. APPEL
appelesq@comcast.net

Theresa  Blanco
EATON AND MCCLELLAN
230 South Broad Street
Suite 304
Philadelphia, PA 19102

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov

Jeffrey Ryan Kooi
KOOI LAW FIRM LLC
jkooi@indyfirm.com

Pamela R. Perron
OFFICE OF THE U.S. ATTORNEY
970 Broad Street
Suite 700
Newark, NJ 07102